UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDY ALBERTY,<br>    Plaintiff, | Civil Action No. 3:20-CV-01014-AVC |
| v. | |
| TROOPER ROBERT A. HUNTER,<br>SERGEANT STEPHEN J. SAMSON,<br>and MASTER SERGEANT DANIEL W.<br>DEPTULA, Jr.<br>    Defendants. | MARCH 9, 2022 |

## SECOND AMENDED COMPLAINT

Plaintiff, by her attorney, complaining of the Defendants Robert A. Hunter, Stephen J. Samson, and Daniel W. Deptula, Jr. of the Connecticut State Police, alleges the following:

## NATURE OF THE ACTION

1. This is an action brought pursuant to 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and the common law of Connecticut sounding in tort to redress the unlawful wrongful arrest, malicious prosecution, and retaliatory prosecution of Plaintiff on the part of the Defendants, acting under color of law.

2. Plaintiff seeks compensatory and punitive damages, and attorney's fees and costs, as provided by law, for her injuries and losses.

**JURISDICTION AND VENUE**

3. This is a civil rights action arising, *inter alia*, under 42 U.S.C. § 1983, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1343(a)(3) and (4) and supplemental jurisdiction over the claims arising out of Connecticut law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the conduct complained of in this action occurred in Willington, Connecticut and Tolland, Connecticut and had its impact in Connecticut.

**PARTIES**

5. Plaintiff Wendy Alberty ("Ms. Alberty") is a Black adult female citizen of the United States who resides in Rosell, New Jersey.

6. Defendant Robert A. Hunter is, and at all relevant times was, a Trooper First Class of the Connecticut State Police, Troop C. He is sued only in his individual capacity.

7. Defendant Stephen J. Samson is, and at all relevant times was, a Sergeant of the Connecticut State Police, Troop C. He is sued only in his individual capacity.

8. Defendant Daniel W. Deptula, Jr. is, and all relevant times was, a Master Sergeant of the Connecticut State Police, Troop C. He is sued only in his individual capacity.

9. At all times material to this action, Defendants Hunter and Samson were acting under color of law.

**FACTUAL ALLEGATIONS**

10. At all times material to this action, Ms. Alberty was employed as a Driver for Peter Pan Bus Lines, a bus company providing interstate transport to individuals.

11. On August 4, 2019, in the course of her employment, Ms. Alberty operated a passenger bus for Peter Pan Bus Lines which originated at the Port Authority Bus Terminal in Manhattan, New York and which had a brief scheduled stop at Union Station in Hartford, Connecticut. Another Peter Pan driver was scheduled to drive the bus from Hartford to Boston, Massachusetts, and Ms. Alberty was to move to the passenger compartment for that leg of the trip.

12. Prior to arriving in Hartford, Ms. Alberty informed the passengers on the bus that the stop in Hartford was only to change bus drivers and that it was not a rest stop, as to prevent passengers from exiting the bus and missing the departure to Boston.

13. Despite the announcement and while the bus was stopped at Union Station, a white female passenger ("Passenger") exited the bus and approached Ms. Alberty to ask if Passenger could retrieve an item from her bag inside the large luggage compartment under the bus. Ms. Alberty agreed, as she believed Passenger needed to retrieve a necessary personal feminine item. She opened the door to the luggage compartment for Passenger.

14. Ms. Alberty opened the luggage compartment for the sole purpose of allowing Passenger an opportunity to retrieve her personal item for the next leg of the trip.

15. While Ms. Alberty was engaging in a jovial conversation with another Peter Pan employee at Union Station, the Peter Pan bus driver scheduled to operate the bus from Hartford to Boston approached the bus to begin his pre-trip safety checks.

16. Believing that Passenger had retrieved her belonging and gotten back onto the bus, Ms. Alberty closed the luggage compartment door and boarded the bus to continue the trip to Boston as a passenger. Ms. Alberty returned to the bus and did not see Passenger in or near the luggage compartment immediately prior to closing the luggage compartment.

17. However, unbeknownst to Ms. Alberty, Passenger had not returned to her seat on the bus. Instead, she intentionally and without informing or seeking Ms. Alberty's permission, voluntarily entered entirely and completely into the luggage compartment beneath the bus. In fact, she climbed so far into the luggage compartment that she could not be seen from outside of the bus. Upon information and belief, Passenger was mistaken as to which side of the bus her luggage was stored and, in an attempt to get to the other side of the compartment without walking around the bus, entered the luggage compartment to gain access to the far side of the bus. The entire incident was captured on video by cameras at Union Station pointing directly at the bus and the incident.

18. When Ms. Alberty shut the luggage compartment door, Passenger was still in the luggage compartment and entirely out of view of Ms. Alberty and the other employee that was engaged in conversation with the Ms. Alberty.

19. At approximately 4:00 p.m. on August 4, 2019, the bus left Hartford and was traveling east on Interstate 84 toward Boston. Defendant Hunter pulled out behind

the bus and initiated a traffic stop. Defendant Hunter informed the driver that Connecticut State Police Troop C dispatch had received a 911 telephone call from a female, the Passenger, stating that she was locked in the luggage compartment of a Peter Pan bus. Defendant Samson also arrived on scene and took command. The driver opened the luggage compartments and Passenger was located inside the second compartment, uninjured.

20.     While at the scene Defendant Samson requested that the Connecticut State Police Troop H dispatch a Trooper to Union Station in Hartford to review any available surveillance footage that would show the incidents occurring around the bus while it was at the station and to determine how Passenger came to be in the luggage compartment.

21.     State Trooper Gonzalez was dispatched to the station, reviewed the footage, and advised Defendants Hunter and Samson via radio transmission that the footage showed that Ms. Alberty did not intentionally close Passenger into the luggage compartment. Instead, he advised that it looked like Ms. Alberty did not know that Passenger was still inside when she closed the door. Defendant Hunter purposefully and knowingly omitted Trooper Gonzalez's statements regarding the video from his Investigation Report.

22.     Passenger, without any basis, wrongfully and intentionally stated that Ms. Alberty purposefully locked her in the luggage compartment despite the obvious video evidence to the contrary. In fact, Passenger said that Ms. Alberty laughed at her while allegedly purposefully locking her in the luggage compartment. The Defendants did not even attempt to ascertain how she got in luggage compartment in the first place.

23. Despite the clear evidence, including statements from their own Trooper Gonzalez, who viewed the video, that Ms. Alberty did not purposefully lock Passenger in the luggage compartment, and the clear and exculpatory video evidence that Passenger fully entered the luggage compartment without the knowledge or consent of Ms. Alberty, and that Ms. Alberty was having a conversation with another employee and did not see Passenger intentionally and without permission enter the luggage compartment of the bus, Defendants Hunter and Samson placed Ms. Alberty under arrest for breach of peace and reckless endangerment.

24. Ms. Alberty fully cooperated with the Defendants and was adamant that she did not intentionally or knowingly lock Passenger in the luggage compartment. Instead, without anything more than an unsupported and baseless allegation from Passenger, a young white woman, and with the exculpatory statements of their own Trooper to the contrary, the Defendants placed Ms. Alberty under arrest.

25. During the course of the arrest on scene the Defendants were equipped with body cameras that were generally recording both audio and video. However, during key moments of the arrest they purposely turned off the audio components of the body cameras, including when they were apparently discussing the arrest and when they were interviewing Passenger.

26. While at Troop C in Tolland, Connecticut, Defendant Hunter completed a typed Uniform Arrest Report which indicated that Ms. Alberty was being charged with Reckless Endangerment 2nd in violation of C.G.S. § 53a-64 and Breach of Peace in violation of C.G.S. § 53a-181 ("Report 1").

27.     However, after completing this Uniform Arrest Report, Defendant Hunter asked Ms. Alberty to make a written statement, despite the fact that she was not represented by counsel at the time and that she had already been arrested and on two occasions gave a verbal statement.

28.     Instead, Ms. Alberty invoked her Fifth Amendment rights and refused to provide a written statement.

29.     After Ms. Alberty invoked this right, Defendant Samson conferred with Defendant Deptula. Through a series of conversations Defendant Deptula instructed Defendant Samson to add an additional charge of Unlawful Restraint in the First Degree in Violation of C.G.S. §53a-95.

30.     As Master Sergeant at all relevant times, Defendant Deptula had supervisory and final authority over the decision of which charges to pursue against Ms. Alberty.

31.     As a direct result of her refusal to provide a written statement and without any evidence, Defendant Hunter, after conspiring with Defendant Samson, and at the direction of Defendant Deptula, added a handwritten notation to the typed Uniform Arrest Report ("Report 2"), adding that Ms. Alberty was additionally being charged with Unlawful Restraint in the First Degree in violation of C.G.S. § 53a-95, a felony. Defendant Hunter informed Ms. Alberty that he was adding the additional charge under orders from Defendant Samson as a result of her refusal to provide a written statement.

32.     The charge of Unlawful Restraint was added to Report 2 as a result of the Defendants' malice toward Ms. Alberty due to her refusal to make a statement, and in spite of the fact that the Defendants already knew that the surveillance footage

established that there was no probable cause to charge Ms. Alberty with any criminal charges. The charge of Unlawful Restraint was added after Ms. Alberty was already booked for the other charges, and ready to bond out. In fact, Report 2 was not even transmitted to the State's Attorney, only Report 1.

33. By ignoring Trooper Gonzalez' unambiguous conclusion that the surveillance footage demonstrated that Ms. Alberty did not intentionally lock Passenger in the luggage compartment, Defendants deliberately disregarded plainly exculpatory evidence.

34. Ms. Alberty was never found guilty of the alleged crimes for which she was arrested by Defendant Hunter. In fact, in October, 2019, the State's Attorney unilaterally entered a *nolle prosequi* on the criminal charges against Ms. Alberty as a result of the clear evidence established by the video. The *nolle* was not based on an arrangement with Ms. Alberty or as part of a plea bargain, or conditioned upon anything required to be done by Ms. Alberty. In fact, the *nolle* was entered only after counsel provided a copy of the surveillance footage to the State. The police report fails to mention Trooper Gonzalez's conclusions upon reviewing the video.

35. As a result of the Defendants' malicious and wrongful conduct toward Ms. Alberty, she was required to secure her release by posting a surety bond, spend several hours in jail, retain the services of an attorney, and travel from her home in New Jersey to Connecticut on multiple occasions to attend court hearings.

36. As a further result of the Defendants' malicious and wrongful conduct, Ms. Alberty's "mugshot" and image were displayed on news stations and newspapers throughout the United States; lost job opportunities as a result of this publicity; suffered

loss of reputation; and was also placed on administrative leave by her employer for months. All of these consequences of the Defendants' conduct caused Ms. Alberty to suffer emotional distress and personal and financial injuries.

## **CLAIMS FOR RELIEF**

**COUNT ONE: Violation of 42 U.S.C. § 1983**

1-36.    Ms. Alberty repeats and realleges paragraphs 1-36 of the complaint as if fully set forth herein.

37.    By the actions and omissions described above, the Defendants acted under color of law and violated 42 U.S.C. § 1983, depriving Ms. Alberty of her Constitutional right to be free from unreasonable searches and seizures, as protected by the Fourth and Fourteenth Amendments to the United States Constitution.

38.    At the time of Defendants' actions and omissions described above, any reasonable law enforcement officer would know that the Defendants' conduct violated Ms. Alberty's clearly established constitutional rights.

39.    As a direct and proximate result of Defendants' acts and omissions described above, Ms. Alberty sustained injuries and damages as set forth above.

**COUNT TWO: False Arrest/False Imprisonment**

1-39.    Ms. Alberty repeats and realleges paragraphs 1-35 of the complaint as if fully set forth herein.

40.    The Defendants knowingly and intentionally arrested, detained, and imprisoned Ms. Alberty against her will without probable cause.

41. The Defendants deliberately disregarded plainly exculpatory evidence when they knowingly and intentionally arrested, detained, and imprisoned Ms. Alberty against her will without probable cause.

42. Ms. Alberty's arrest, detention and imprisonment were wholly unlawful.

43. The prosecution of the charges terminated in favor of Ms. Alberty.

44. By the acts and omissions described above, the Defendants engaged in false arrest and/or false imprisonment of Ms. Alberty.

45. At the time of Defendants' actions and omissions described above, any reasonable law enforcement officer would know that the Defendants' conduct violated Ms. Alberty's clearly established constitutional rights.

46. As a direct and proximate result of Defendants' acts and omissions described above, Ms. Alberty sustained injuries and damages as set forth above.

**COUNT THREE: Malicious Prosecution**

1-46. Ms. Alberty repeats and realleges paragraphs 1-46 of the complaint as if fully set forth herein.

47. The Defendants initiated criminal proceedings against Ms. Alberty.

48. The criminal proceeding terminated in favor of Ms. Alberty.

49. The Defendants acted without probable cause and with malice toward Ms. Alberty.

50. By the acts and omissions described above, the Defendants engaged in malicious prosecution of Ms. Alberty.

51.     At the time of Defendants' actions and omissions described above, any reasonable law enforcement officer would know that the Defendants' conduct violated Ms. Alberty's clearly established constitutional rights.

52.     As a direct and proximate result of Defendants' acts and omissions described above, Ms. Alberty sustained injuries and damages as set forth above.

**COUNT FOUR: Retaliatory Prosecution**

1-52.   Ms. Alberty repeats and realleges paragraphs 1-52 of the complaint as if fully set forth herein.

53.     Ms. Alberty had a Constitutional right to refrain from speech, as guaranteed and protected by the First and Fifth Amendments to the United States Constitution.

54.     Ms. Alberty exercised her Constitutional right to refrain from speech when she declined to provide a written statement to the Defendants while in custody.

55.     As a direct result of Ms. Alberty's exercise of her Constitutional right to refrain from speech, the Defendants charged her with Unlawful Restraint 1st in violation of C.G.S. § 53a-95, despite their knowledge that there was no probable cause to support this charge, or the initial two charges.

56.     By the acts and omissions described above, the Defendants engaged in retaliatory prosecution of Ms. Alberty.

57.     At the time of Defendants' actions and omissions described above, any reasonable law enforcement officer would know that the Defendants' conduct violated Ms. Alberty's clearly established constitutional rights.

58. As a direct and proximate result of the Defendants' acts and omissions described above, Ms. Alberty sustained injuries and damages as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims judgment against the Defendants and each of them as follows:

    A.    Compensatory damages in an amount this Court shall consider to be just, reasonable and fair;

    B.    Punitive damages in an amount this Court shall consider to be just, reasonable and fair;

    C.    Attorneys' fees and costs, as appropriate;

    D.    Such other relief as this Court shall consider to be fair and equitable.

Respectfully Submitted,
THE PLAINTIFF,
WENDY ALBERTY,
BY HER ATTORNEY,

/s/ Nate Baber
Nate Baber ct29046
Aeton Law Partners LLP
311 Centerpoint Drive
Middletown, CT 06457
T: (860) 724-2163
F: (860) 724-2161
nate@aetonlaw.com

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all claims triable to a jury in this action.

/s/ Nate Baber
Nate Baber ct29046